UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JAMES W. ROSS,<br><br>      Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Case No. EDCV 07-04500 AJW<br><br>     MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural history of this case, which is summarized in the Joint Stipulation. [See JS 2]. In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of a history of asthma, right knee pain, back pain, and carpal tunnel syndrome, but that he retained the residual functional capacity ("RFC") to perform a range of medium work. [JS 2; Administrative Record ("AR") 16-17]. The ALJ found that plaintiff's RFC did not preclude performance of jobs available in significant numbers in the

national economy, and therefore that plaintiff was not disabled. [AR 17-18].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Development of the record**

Plaintiff contends that the ALJ failed properly to develop the record in that the ALJ did not diligently attempt to obtain updated treating source records. [JS 3-6].

The ALJ is not "'a mere umpire' during disability proceedings. Rather, the ALJ has 'a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006)(quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(per curiam) and Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983)). Where, as here, a claimant is not represented by counsel, "it is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. The ALJ must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981)(quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). "When 'the heavy burden imposed by Cox' is not met, and the claimant may have been prejudiced, 'the interests of justice demand that the case be remanded.'" Higbee, 975 F.2d at 561 (quoting Vidal, 637 F.2d at 714-715 and citing Thompson v. Schweiker, 665 F.2d 936, 941 (9th Cir.1982); Cruz v. Schweiker, 645 F.2d 812, 814 (9th Cir.1981); and

Cox, 587 F.2d at 991).

At the beginning of the hearing, the ALJ engaged in a colloquy with plaintiff to ensure that he understood his right to have an attorney or non-attorney representative. Plaintiff unequivocally indicated that he wished to proceed with the hearing without a representative. [AR 168-170]. Plaintiff does not assert that his waiver of counsel was not knowing or voluntary. That, however, does not dispose of the question whether the ALJ discharged his duty to ensure that the record was adequately developed.

The record contains treating source records requested in or about August 2005 by the Social Security Administration from H. Claude Hudson Comprehensive Health Center, a Los Angeles County clinic ("Hudson CMC"); Ana Anikian, D.O., and West Central Mental Health Center ("West Central MHC"), another Los Angeles County facility. The records from Hudson CMC include some Los Angeles County-USC Medical Center records. The most recent of those treatment records is dated August 9, 2005. [AR 86-111].

During the February 2007 hearing, the ALJ asked plaintiff whether he was currently seeing a mental health professional or any other doctors. Plaintiff said yes. [AR 174]. The ALJ told plaintiff that he could write down the full names and addresses of his treating sources after the hearing and leave that information with the front desk, "and if you do that, then I'll request that the staff here write for all medical records, from all your treating doctors" at no cost to plaintiff. [AR 175]. Plaintiff responded that he did not know the full name of his mental health treatment provider, Dr. Mohr.[1] The ALJ asked him to find out the information. [AR 175]. Plaintiff replied that he had with him an appointment slip showing the clinic's name and doctor's last name, but he did not know the doctor's full name. The ALJ reiterated that plaintiff could "write down on a piece of paper [the] full name and address after the hearing." [AR 176]. Again plaintiff said that he did not know her full name, adding, "I mean, they're at the facility. They'll know who Dr. Mohr is." [AR 176]. The ALJ responded "[t]hen write down what you have and that's it. If there's enough, the staff will write, they'll try to figure it out. . . . [J]ust write down everything[.]" [AR 176]. Plaintiff replied, "Okay. I got all the information." [AR 176].

Before the hearing closed, the ALJ reminded plaintiff that it was "very important, we want to make

---

[1] Dr. Mohr's name was transcribed as "Dr. Moore" in the hearing transcript. To avoid confusion, the correct spelling is used consistently in this memorandum.

3

1  sure all the evidence is in here before any decisions are made and so write down, whatever you have there,
2  name, address of the doctors, hospitals, whatever [.]" [AR 180].  Plaintiff asked, "Can I give you a copy of
3  all this information?" Plaintiff appears to have been referring to information about his prescriptions and an
4  appointment slip that he brought with him and had mentioned earlier during the hearing. [AR 174-175, 180].
5  The ALJ replied, "Okay, excellent.  Then what happens?  We'll write to those doctors, whoever you give
6  us.  You know your doctors, you know them, of course.  And whatever they send back, I'll admit into the
7  record and consider those as well as the rest of the evidence." [AR 181].  Plaintiff also told the ALJ,"I go
8  to a County Hospital, so I don't really have no certain doctor there. . . . But I do have a, my doctor's think
9  [sic] here." [AR 181]. The ALJ answered, "Excellent.  Then just make a copy of that, as well, and leave it
10 at the front.  All right?" [AR 181].  The ALJ instructed plaintiff to wait out front after the hearing, and
11 someone would bring him his file to review "and so you can make copies of everything for us." [AR 181].

12      The record includes, as a single exhibit marked 9F, copies of documents that fit the description of
13 those plaintiff mentioned during the hearing.  Those documents are:  (1) a County of Los Angeles
14 Department of Health Services after care instruction sheet dated 2/12/07 instructing plaintiff to take
15 prescriptions for hypertension and low back pain; (2) an appointment slip indicating that plaintiff was
16 scheduled for a medication visit with Dr. Mohr on February 26 at West Central MHC, 3751 Stocker St., Los
17 Angeles, with the clinic's phone number; (3) copies of plaintiff's prescriptions from Hudson CHC dated
18 2/12/2007 for naproxen, a nonsteroidal anti-inflammatory drug; albuterol sulfate HFA aerosol, for asthma;
19 and hydrochlorothiazide, a diuretic used for treating mild hypertension; and (4) patient counseling forms
20 for four numbered prescriptions from Garfield Pharmacy dated November 30, 2006 (without the patient's
21 name on them), for Effexor (venlafaxine), an antidepressant; Geodon (ziprasidone), an antipsychotic;
22 Risperdal (risperidone), an antipsychotic; and trazodone, an antidepressant. [AR 157-165]. The record
23 elsewhere indicates that plaintiff took pain medication (naproxen, Motrin, duloxetine), the antidepressants
24 Effexor and trazodone,  hydrochlororothiazide for high blood pressure, and an albuterol inhaler for asthma.
25 [AR 50-52, 148].

26      In the hearing decision, the ALJ noted:
27      The Social Security Administration itself has made all reasonable efforts to obtain the
28      evidence necessary to make a decision.  The claimant provided no other records from

4

>treating sources documenting treatment for any other impairments, although, [sic] the regulations require that he cooperate in furnishing to help obtain medical or other evidence about his impairments.
>
>The undersigned offered at the Hearing to have the office staff write to any of claimant's treating physicians and hospitals if he would give a list of their names and addresses and leave it at the reception desk after the Hearing, but plaintiff left none.

[AR 16].

Plaintiff contends that the ALJ erred because plaintiff "persistently attempted to give the ALJ all the information necessary to obtain his medical records," and "attempted to and did in fact provide the ALJ with as much pertinent information as was needed to enable the ALJ to obtain Dr. Mohr's records." [AR 6]. Plaintiff asserts that the ALJ made no effort to follow up with plaintiff after the hearing to ensure that the necessary records in fact were obtained, and that the file is devoid of evidence that "the ALJ or his staff did the legally required due diligence to obtain" additional treating source evidence. [JS 6]. Plaintiff contends that a remand is required to obtain medical records from Dr. Mohr. [JS 6].

The ALJ initially instructed plaintiff to write down as much as he knew of the names and addresses of his doctors and leave that information with the office staff. When plaintiff pointed out that he had documents with him showing his treatment providers' contact information and asked if he could give the ALJ copies of those documents, however, the ALJ acquiesced. The ALJ also indicated that the office staff would use that information to contact plaintiff's doctors in an attempt to obtain updated treatment information. Perhaps the ALJ did not intend to relieve plaintiff of the responsibility of writing down his providers' contact information. Based on the hearing transcript, however, plaintiff reasonably could have concluded that giving the proffered copies of his records was enough. By copying those records and giving them to the ALJ, plaintiff satisfied his responsibility to cooperate in procuring relevant evidence.

The copies of the records that plaintiff provided to the ALJ were made a part of the record, and those documents contain the names and addresses of two facilities where he was receiving treatment—the Hudson CMC and West Central MHC—as well as Dr. Mohr's name. That information was not new. The Social Security Administration previously had requested treatment records from those same providers. The earlier requests, however, were made in or about August 2005, only a month after plaintiff's July 2005 filing date

5

and alleged onset date. [See AR 86-111]. Records received in response those requests show that plaintiff sought crisis care in July 2005 for auditory hallucinations and other mental symptoms and began treatment for depression in August 2005. [AR 106-111]. The only consultative examination, an internal medical examination, was conducted in December 2005. The hearing was in February 2007, about a year and a half after the most recent treatment report in the record.

Treatment records that reach no more than a month or two beyond a claimant's alleged onset date ordinarily will not suffice to establish disability, which by definition requires an impairment that is expected to result in death or (much more commonly) has lasted, or is expected to last, for a continuous period of at least twelve months. Without the updated treatment records that the ALJ said he would try to obtain, plaintiff had little hope of establishing that he had a severe mental impairment (or any other impairment or combination of impairments) that met the definition of disability. Unsurprisingly, then, the ALJ found that "there was no evidence [that plaintiff's] alleged mental impairment has been so severe for 12 continuous months to prevent performing of at least simple routine tasks, although there were some Global Assessment of Functioning (GAF) scores in the 40s and 50s." [AR 16]. Plaintiff was prejudiced by the ALJ's failure "to scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts," Vidal, 637 F.2d at 713, by requesting updated treatment records or taking other steps to develop the record fully and fairly.

That error was compounded because the ALJ did not address the testimony and documentary evidence indicating that plaintiff takes, or has taken, significant prescription medication for depression and psychosis along with medication for pain, hypertension, and asthma. Evidence of such treatment is relevant to assess the severity of plaintiff's alleged mental impairment and the credibility of his subjective complaints. See generally 20 C.F.R. §§ 416.920- 416.923, 416.929(c)(3)(iv); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *3; SSR 0607p, 1996 WL 374186, at *3. In addition, the ALJ adopted the nonexamining state agency physician's finding that plaintiff had *moderate* difficulties in maintaining concentration, persistence, or pace, mild restrictions in activities of daily living, and mild difficulties in maintaining social functioning. The ALJ did not acknowledge or attempt to reconcile the conflict between those findings and his finding that plaintiff's mental impairment was not severe. See 20 C.F.R. § 416.920a(d)(1)(stating that if the claimant has no more than *mild* limitations in those three functional areas and no episodes of decompensation, "we will generally conclude that your impairment(s) is not severe. .

. .").

The ALJ committed reversible legal error. Because the record is not fully developed and outstanding issues remain before a disability determination can be made, the appropriate remedy is a remand for further administrative proceedings. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

## Conclusion

For the reasons described above, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

DATED: June 9, 2008

_____
ANDREW J. WISTRICH
United States Magistrate Judge